# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | |
| **MODERN CONTINENTAL** | ) | **Chapter 11** |
| **CONSTRUCTION CO., INC.,** | ) | |
| | ) | **Case No. 08-14558 (WCH)** |
| Debtor. | ) | |
| | ) | |

### PLAN OF LIQUIDATION OF MODERN CONTINENTAL
### CONSTRUCTION CO., INC., DEBTOR AND DEBTOR-IN-POSSESSION
### (As Modified September 16, 2009)

HANIFY & KING,
Professional Corporation
One Beacon Street
Boston, MA  02108
Harold B. Murphy, Esq. (BBO #362610)
D. Ethan Jeffery, Esq. (BBO #631941)
Tel:    (617) 423-0400
Fax:    (617) 556-8985

Dated: September 16, 2009

## INTRODUCTION

Pursuant to Section 1121 of the United States Bankruptcy Code, Modern Continental Construction Co., Inc. (the "Debtor"), the debtor and debtor-in-possession in the above captioned bankruptcy proceeding, proposes the following *Plan of Liquidation of Modern Continental Construction Co., Inc., Debtor and Debtor-in-Possession* (the "Plan") to its creditors and holders of equity interests.

The Plan contemplates the continued wind down of the Debtor's business operations, the liquidation of the Debtor's assets and distributions to creditors from the proceeds of such liquidation.  The Plan provides for the appointment of a Liquidating Supervisor (as defined below) who will hold, manage, collect, liquidate and administer the Debtor's remaining assets and distribute the cash obtained from the liquidation of assets sale and from such remaining to creditors.

## ARTICLE I

### DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, capitalized terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in this Plan that is also defined in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in this Plan," "this Plan," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, sub-Section or clause contained in this Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions this Plan.

1.1     "Administrative Claim Bar Date" means the date by which requests for Administrative Expense Claims must be filed pursuant to Article XII of the Plan.

1.2     "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Bankruptcy Case; (ii) all fees and charges assessed against the Estate under 28 U.S.C. §1930; and (iii) all Professional Fee Claims (to the extent Allowed by Final Order).

1.3     "Allowed" shall mean, with reference to any Claim:

(a)     A Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     A Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

(c)     A Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     Any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

1.4     "Assets" shall mean all of the Estate's right, title, and interest in and to property of whatever type or nature contemplated under Section 541 of the Bankruptcy Code (each such item of or interest in property being sometimes referred to herein as an Asset), including, without limitation, any Causes of Action.

1.5     "Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

1.6     "Bank Group" shall mean, collectively (a) the parties (other than the Debtor), and all such parties predecessors, successors and assigns, to the Fourth Amended and Restated Term Loan Agreement dated as of February 12, 2004, including, without limitation, Fleet National Bank (now Bank of America, N.A., successor by merger to Fleet National Bank), KeyBank National Association and Sovereign Bank, and (b) the parties (other than the Debtor), and all such parties predecessors, successors and assigns, to the Second Amended and Restated Note Purchase Agreement dated as of February 12, 2004, including, without limitation, Nationwide Life Insurance Company, Nationwide Life and Annuity Insurance Company, Provident Life and Accident Insurance Company and The Paul Revere Life Insurance Company.

1.7     "Bank Group Agreement" shall mean the inter-creditor agreements between, among others, the Bank Group and Travelers.

1.8     "Bankruptcy Case" shall mean the Debtor's case pending in the Bankruptcy Court under docket number 08-14558 (WCH).

1.9     "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended from time to time.

1.10     "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

1.11     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

1.12     "Bar Date" shall mean the last date, as established by the Bankruptcy Court, by which Persons asserting certain Claims must file a proof of claim or be forever barred from

asserting a Claim against the Debtor or its property, from voting on this Plan and/or from sharing in distributions under this Plan.

1.13    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts or in the Bankruptcy Rules.

1.14    "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

1.15    "Causes of Action" shall mean, without limitation, any and all of the Estate's actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise.

1.16    "Claim" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.17    "Claim Objection Deadline" shall mean (a) for all Claims other than Rejection Claims, the later of (i) ninety (90) days after the Effective Date or (ii) such other time as may be ordered by the Court on request of the Liquidating Supervisor filed before such deadline, and (b) for Rejection Claims, the later of (i) ninety (90) days after the Effective Date, (ii) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objection to such Claim or (iii) such other time as may be ordered by the Court on the request of the Liquidating Supervisor filed before such deadline.

1.18    "Class" shall mean those classes designated in Article IV of this Plan.

1.19    "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

1.20    "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

1.21    "Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan and any supplementary orders of the Bankruptcy Court issued in furtherance of this Plan.

1.22    "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

1.23    "Creditor" shall mean any Person who holds a claim against the Debtor.

1.24    "Creditors' Committee" shall the mean the official committee of unsecured creditors appointed by the Office of the United States Trustee in the Bankruptcy Case.

1.25    "Debtor" shall mean Modern Continental Construction Co., Inc.

1.26    "Deficiency Claim" shall mean, with respect to a Secured Claim, the amount by which the Secured Claim exceeds the value of the Collateral securing such claim.

1.27    "DIP Financing" shall mean the post-petition credit facility between the Debtor and Travelers that was approved by the Bankruptcy Court, including, without limitations, all extensions of such post-petition credit facility.

1.28    "Disclosure Statement" shall mean the disclosure statement relating to this Plan, in the form approved by the Bankruptcy Court, including, without limitation, all exhibits and schedules to the Disclosure Statement.

1.29    "Disputed Claim" shall mean:

(a)    If no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Non-Appealable Order; or

(c)    A Claim that is a Contingent or Unliquidated Claim.

1.30    "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

1.31    "Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 of this Plan.

1.32    "Distribution" shall mean any payment required to be made to an Allowed Claim under this Plan.

1.33    "Distribution Record Date" shall mean the record date for purposes of making distributions under this Plan to holders of Allowed Claims, which date shall be the earlier to occur of (a) the first date fixed by an order of the Bankruptcy Court, and (b) the Confirmation Date.

1.34    "Effective Date" shall mean the first Business Day after the Confirmation Date when all conditions precedent to the occurrence of the Effective Date set forth in Section 10.1 of this Plan have been satisfied or waived pursuant to this Plan.

1.35    "Equity Interest" shall mean the interest of any holder of any equity interest in the Debtor, and all options and/or rights, contractual or otherwise, to acquire any equity interest in the Debtor, as such interests exist immediately prior to the Distribution Record Date.

1.36    "Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.37    "Final Decree" shall mean an order entered by the Bankruptcy Court closing the Bankruptcy Case.

1.38    "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, and (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code.

1.39    "Information" shall mean the felony information filed against the Debtor on or about June 20, 2008, by the United States Department of Justice in the United States District Court for the District of Massachusetts.

1.40    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

1.41    "Liquidation Supervisor" shall mean Craig Jalbert, or his successor, as the person to supervise the process of liquidating the Assets and effecting the distributions in accordance with the provisions of this Plan.

1.42    "Net Proceeds" shall mean the proceeds of any sale, transfer or other liquidation of an Asset, including the prosecution of Causes of Action, less the costs and expenses of selling, transferring, prosecuting and/or liquidating such Asset, including, without limitation, attorneys' fees and expenses, broker's commissions, taxes and real estate closing costs.

1.43    "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

1.44    "Permitted Investments" shall mean the investments set forth in Section 6.5(b) of this Plan.

1.45    "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision this Plan.

1.46    "Petition Date" shall mean June 23, 2008, the date on which the Debtor filed a voluntary Chapter 11 petition in the Bankruptcy Court.

1.47    "Plan" shall mean this *Plan of Liquidation of Modern Continental Construction Co., Inc., Debtor and Debtor-in-Possession*, including, without limitation, all exhibits, supplements, appendices and schedules to this Plan.

1.48    "Priority Claims" shall mean all Claims (or portions thereof), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims, Professional Fee Claims and Administrative Expense Claims.

1.49    "Priority Tax Claim" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.50    "Professional" shall mean any Person: (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.51    "Professional Fee Claim" shall mean a Claim of a Professional for the fees and expenses under Sections 330, 331, or 503 of the Bankruptcy Code as approved by an Order of the Bankruptcy Court.

1.52    "Pro Rata" shall mean when used with reference to a distribution of property under this Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

1.53    "PRT Carve-Out" shall mean a carve-out, consisting of Travelers' interest in the PRT Proceeds, to be established upon the Effective Date for the benefit of the holders of Allowed General Unsecured Claims.  The PRT Carve-Out shall be free and clear of all Liens, Claims and encumbrances of any kind, and shall be paid to the Reorganized Debtor for distribution to the holders of Allowed Claims in accordance with this Plan.

1.54    "PRT Proceeds" shall mean the Net Proceeds of the sale, transfer or other liquidation of the Debtor's interest in Paul Revere Transportation, LLC.

1.55    "Rejection Claims" shall mean Claims arising from the rejection of an executory contract or lease of personal property or real property by the Debtor or the Liquidating Supervisor.

1.56    "Reorganized Debtor" shall mean the Debtor from and after the Effective Date.

1.57    "Reserve" shall mean, with respect to any Disputed Claim or Claim that has not yet been Allowed, an amount equal to 100% of the distributions to which holders of such Claims would be entitled under this Plan if such Claims were Allowed Claims, or in such lesser amount as required by a Non-Appealable Order.

1.58    "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

1.59    "Secured Claim" shall mean (a) any Claim that is secured by a Lien on Collateral, to the extent of the value of such Collateral as determined in accordance with Section 506(a) of the Bankruptcy Code, less any payments received post-petition, and (b) a Setoff Claim.

1.60    "Senior Class" shall mean, with respect to any Class, a Class (other than a Class of Secured Claims) entitled to a priority of distribution under the Bankruptcy Code and/or applicable non-bankruptcy law over the Class in question.

1.61    "Setoff Claim" shall mean a Claim against the Debtor that has a valid right of setoff with respect to such Claim, which right is enforceable under Section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to in writing by the Debtor or the Liquidating Supervisor, to the extent of the amount subject to such right of setoff.

1.62    "Shared Collateral" shall mean collateral as to which Travelers and the Bank Group have a sharing arrangement under the Bank Group Agreement.

1.63    "Travelers" shall mean any or all of St. Paul Fire and Marine Insurance Company, Seaboard Surety Company, St. Paul Guardian Insurance Company, St. Paul Medical Liability Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc., Fidelity and Guaranty Insurance Company, Northern Indemnity, Fidelity and Guaranty Insurance Underwriters, Inc. and Afianzadora Insurgentes, S.A. de C.V. and their predecessors, successors and assigns.

1.64    "Travelers' Advance" shall mean all amounts advanced by Travelers to the Reorganized Debtor after the Effective Date, including: (a) the Wind Down Costs, and (b) the lesser of (i) the aggregate of the Allowed Priority Tax Claims, and (ii) $100,000.

1.65    "Travelers' Collateral" shall mean all of the Assets except for the Avoidance Actions and any proceeds of the Avoidance Actions.

1.66    "Wind Down Costs" shall mean (a) $25,000, and (b) reasonable amounts necessary after the Effective Date for records storage, maintenance and support of computer systems, rent and independent contractor fees, all in an amount agreed to between Travelers and the Liquidating Supervisor.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    **Introduction.**

All Claims and Equity Interests, except Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

2.2     **Unclassified Claims (not entitled to vote on the Plan).**

(a)     Administrative Expense Claims (including claims under Section 503(b)(9) of the Bankruptcy Code)

(b)     Professional Fee Claims

(c)     Priority Tax Claims

2.3     **Classified Claims and Equity Interests.**

(a)     Class 1 – Travelers' Secured Claims.  Class 1 shall consist of the Secured Claims of Travelers.

(b)     Class 2 – Bank Group's Secured Claims.  Class 2 shall consist of the Secured Claims of the Bank Group.

(c)     Class 3 – Miscellaneous Secured Claims.  Class 3 shall consist of Secured Claims that are not separately classified.

(d)     Class 4 – Priority Claims.  Class 4 shall consist of the Priority Claims.

(e)     Class 5 – General Unsecured Claims.  Class 5 shall consist of the General Unsecured Claims.

(f)     Class 6 – Claims of the United States of America.  Class 6 shall consist of the Claims of the United States of America for any amounts due on account of or arising from the Information.

(g)     Class 7 – Equity Interests.  Class 7 shall consist of the Equity Interests.

## ARTICLE III

### TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

3.1     **Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving

distributions under, this Plan.  All such Claims are instead treated separately in accordance with
the terms set forth in this Article III.

3.2     **Administrative Expense Claims.**

(a)     <u>General</u>.  Except for Professional Fee Claims and fees due to the United States
Trustee, each Allowed Administrative Expense Claim shall be paid in one of the following ways:
(i) in full in cash on the later to occur of the Effective Date and the entry of the order of the
Bankruptcy Court Allowing the Administrative Expense Claim, unless a stay of such order is
obtained, or (ii) as agreed between the holder of the Allowed Administrative Expense Claim and
the Liquidating Supervisor.

(b)     <u>U.S. Trustee's Fees</u>.  The fees due to the United States Trustee pursuant to 28
U.S.C. § 1930 shall be paid in full by the Debtor in Cash, on or before the Effective Date.

(c)     <u>Professional Compensation and Expense Reimbursement Claims</u>.

(i)     Except for those Professionals who were exempted from filing fee
applications by an order of the Bankruptcy Court, on or before thirty (30) days after the Effective
Date, each Professional shall file a final application for the allowance of any Professional Fee
Claims for services rendered or reimbursement of expenses incurred through and including the
Effective Date.  Allowed Professional Fee Claims shall be paid in full in cash on the later to
occur of the Effective Date or the entry of the order of the Bankruptcy Court allowing the
Professional Fee Claim, unless a stay of such order is obtained.

(ii)     All fees and expenses of professionals for services rendered after the
Effective Date shall be paid by the Liquidating Supervisor upon receipt of reasonably detailed
invoices in such amounts and on such terms as the professional and the Liquidating Supervisor
may agree.  No further order or authorization from the Bankruptcy Court shall be necessary to
permit the Liquidating Supervisor to pay the fees and expenses of professionals for services
rendered after the Effective Date.

(d)     All payments to the holders of Allowed Administrative Expense Claims shall be
made by the Liquidating Supervisor from the DIP Financing, the PRT Carve-Out and the Net
Proceeds of the Avoidance Actions.  All payments to the holders of Allowed Administrative
Expense Claims shall be made as soon as practicable after the Effective Date.

3.3     **Priority Tax Claims.**

At the sole election of the Liquidating Supervisor, each holder of an Allowed Priority
Tax Claim shall be paid in full, in Cash, on the later of the Effective Date or the date that a
Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is
practicable.  All payments to the holders of Allowed Priority Tax Claims shall be made by the
Liquidating Supervisor from the Traveler's Advance, the PRT Carve-Out and the Net Proceeds
of the Avoidance Actions.

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1    **Class 1 – Travelers' Secured Claims.**

(a)    <u>Impairment and Voting</u>.  Class 1 is impaired under this Plan.  The holders of Class 1 Claims shall be entitled to vote to accept or reject this Plan.

(b)    <u>Treatment</u>.  Travelers shall have an Allowed Secured Claim equal to the value of the Travelers Collateral.  Travelers shall retain its pre and post-petition Liens against the Travelers' Collateral.  Subject to the rights of the Bank Group to receive a portion of the Shared Collateral, the Liquidating Supervisor shall pay Travelers the Net Proceeds of the sale, transfer or other disposition of the Travelers Collateral as soon as practicable after such sale, transfer or other disposition; <u>provided that</u>, upon the Effective Date, the PRT Carve-Out shall be established.  Confirmation of this Plan shall constitute authorization for the Liquidating Supervisor, upon the agreement of Travelers, to return all or any part of the Travelers' Collateral to Travelers in reduction of its Allowed Secured Claim.

(c)    The Deficiency Claim arising from Travelers' Allowed Secured Claim shall be treated as an Allowed Class 5 Claim.

4.2    **Class 2 – Bank Group's Secured Claims.**

(a)    <u>Impairment and Voting</u>.  Class 2 is impaired under this Plan.  The holders of Class 2 Claims shall be entitled to vote to accept or reject this Plan.

(b)    <u>Treatment</u>.  The Bank Group shall have an Allowed Secured Claim equal to the value of its Collateral.  The Bank Group shall retain its pre and post-petition Liens against its Collateral.  Subject to the rights of Travelers to receive a portion of the Shared Collateral, the Liquidating Supervisor shall pay the Bank Group the Net Proceeds of the sale, transfer or other disposition of the Bank Groups' Collateral as soon as practicable after such sale, transfer or other disposition.  Confirmation of this Plan shall constitute authorization for the Liquidating Supervisor, subject to the Bank Group Agreement, to return all or any part of the Bank Groups' Collateral to the Bank Group in reduction of its Allowed Secured Claim.

(c)    Any Allowed Deficiency Claim arising from the Bank Groups' Allowed Secured Claim shall be treated as a Class 5 Claim.

4.3    **Class 3 – Miscellaneous Secured Claims.**

(a)    <u>Impairment and Voting</u>.  Class 3 is impaired under this Plan.  The holders of Class 3 Claims shall be entitled to vote to accept or reject this Plan.

(b)    <u>Treatment</u>.  In full and final satisfaction of all Class 3 Claims and at the sole election of the Liquidating Supervisor, the holders of all Allowed Secured Claims that are not classified in another Class shall receive one of the following: (i) Cash in an amount equal to such Allowed Secured Claim on the later of the Effective Date and the date such Secured Claim

becomes an Allowed Secured Claim, or as soon thereafter as is practicable, (ii) the return of the Collateral securing its Allowed Secured Claim, in full and complete satisfaction of such Claim on the later of the Effective Date or the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable, or (iii) treatment as agreed to by the holder of the Allowed Secured Claim and the Debtor or, after the Effective Date, the Liquidating Supervisor. Until the payment in full of an Allowed Class 3 Secured Claim, the holder of such Allowed Secured Class 3 Claim shall retain any valid and perfected Liens it held against the Assets as of the Effective Date.  Upon the payment in full of an Allowed Class 3 Secured Claim: (x) all credit agreements, notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing such Allowed Class 3 Secured Claim, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by the Reorganized Debtor under any applicable agreement, law, regulation, order or rule; (y) the obligations of the Reorganized Debtor to the holder(s) of such Allowed Class 3 Secured Claim, whether under this Plan or otherwise, shall be deemed cancelled, discharged and released; and (z) all of the right, title and interest of the Debtor in the Assets securing such Allowed Class 3 Secured Claims shall revert to the Reorganized Debtor.  On the Effective Date, all Liens, encumbrances or interests of any kind held by any Class 3 Creditor that do not secure an Allowed Class 3 Secured Claim shall be canceled, discharged and released without further act or action by the Debtor that is required under any applicable agreement, law, regulation, order or rule.

(c)      Any Allowed Deficiency Claim arising from an Allowed Class 3 Claim shall be treated as a Class 5 Claim.

4.4      **Class 4 – Priority Claims.**

(a)      <u>Impairment and Voting</u>.  Class 4 is impaired under this Plan.  The holders of Class 4 Claims shall be entitled to vote to accept or reject this Plan.

(b)      <u>Treatment</u>.  In full satisfaction, settlement, release and discharge of all Class 4 Claims, each holder of an Allowed Class 4 Claim shall receive payment from the PRT Carve-Out and the Net Proceeds of the Avoidance Actions.  Payments to the holders of Allowed Class 4 Claims shall be made by the Liquidating Supervisor on the later of the Effective Date or the date that a Priority Claim becomes an Allowed Priority Claim, or as soon as practicable after the receipt of the Net Proceeds of the Avoidance Actions.

4.5      **Class 5 – General Unsecured Claims.**

(a)      <u>Impairment and Voting</u>.  Class 5 is impaired under this Plan.  The holders of Class 5 Claims shall be entitled to vote to accept or reject this Plan.

(b)      <u>Treatment</u>.  In full satisfaction, settlement, release and discharge of all Class 5 Claims and only after all Senior Classes have been paid in full, each holder of an Allowed Class 5 Claim shall receive one or more Pro Rata distributions from the PRT Carve-Out and the Net Proceeds of the Avoidance Actions.  Payments to the holders of Allowed Class 5 Claims shall be made by the Liquidating Supervisor as soon as practicable after the Effective Date and from time to time thereafter as monies become available.

4.6     **Class 6 – Claims of the United States of America.**

(a)     <u>Impairment and Voting</u>.  Class 6 is impaired under this Plan.  The holders of Class 6 Claims shall be entitled to vote to accept or reject this Plan.

(b)     <u>Treatment</u>.  In full satisfaction, settlement, release and discharge of all Class 6 Claims and only after all Senior Classes have been paid in full, the holder of the Allowed Class 6 Claim shall receive one or more Pro Rata distributions from the PRT Carve-Out and the Net Proceeds of the Avoidance Actions.  Payments to the holder of the Allowed Class 6 Claim shall be made by the Liquidating Supervisor as soon as practicable after the Effective Date and from time to time thereafter as monies become available.

4.7     **Class 7 – Equity Interests.**

(a)     <u>Impairment and Voting</u>.  Class 7 is impaired under this Plan and is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

(b)     <u>Treatment</u>.  In full satisfaction, settlement, release and discharge of all Class 7 Equity Interests and only after all Senior Classes have been paid in full, each holder of an Allowed Class 7 Equity Interest shall receive one or more Pro Rata distributions from the PRT Carve-Out and the Net Proceeds of the Avoidance Actions.  Payments to holders of Allowed Class 7 Equity Interests shall be made by the Liquidating Supervisor as soon as practicable after the Effective Date and from time to time thereafter as monies become available.

(c)     <u>Voting Rights</u>.  On the Effective Date and until the dissolution of the Reorganized Debtor pursuant to Section 5.10 of this Plan, the holders of the Allowed Class 7 Equity Interests shall be vested with all voting rights associated with the Debtor's stock, whether common or preferred, provided that the holders of the Allowed Class 7 Equity Interests must exercise such voting rights consistent with and in accordance with this Plan.

4.8     **Reservation of Rights With Respect to Claims.**

The Debtor and, after the Effective Date, the Liquidating Supervisor, reserve the right to, among other things, (i) contest the right of the holder of any Claim to vote on this Plan, (ii) contest the right of the holder of any Claim to receive distributions under this Plan, and (iii) seek to subordinate any Claim, for inequitable conduct or otherwise.

### ARTICLE V

### MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     **Priority of Travelers' Advance.**

The Travelers' Advance shall be secured by a Lien on the same Collateral that secures the DIP Financing, which Lien shall have the same extent, priority and validity as the Liens securing the DIP Financing.

13

5.2    **Sales of Assets.**

Confirmation of this Plan and the occurrence of the Effective Date shall constitute authorization for the Liquidating Supervisor, without a further order of the Bankruptcy Court, to sell, lease, exchange, transfer, convey or otherwise dispose of any Asset free and clear of all liens, claims and interests pursuant to Section 363(f) of the Bankruptcy Code; provided that, the Liquidating Supervisor shall not sell, lease, exchange, transfer, convey or otherwise dispose of all or any part of the Travelers' Collateral without Travelers' prior approval.  Any entity with an Allowed Secured Claim against an Asset sold, transferred or otherwise disposed of under this Plan shall be entitled to the protection of Section 363(k) of the Bankruptcy Code; provided that, any holder of an Allowed Secured Claim that exercises its rights under Section 363(k) of the Bankruptcy Code shall purchase the Asset subject to any senior Liens.  Prior to executing an agreement to sell, transfer or otherwise dispose of an Asset, the Liquidating Supervisor shall, by first class U.S. mail, serve the holders of Allowed Secured Claims against such Asset with a notice of the intention to enter into such an agreement (the "Notice").  The Notice shall include, among other things, a description of the Asset to be sold, transferred or disposed of and the price or other consideration to be paid for the Asset.  The holder of an Allowed Secured Claim against the Asset to be sold, transferred or otherwise disposed of shall have fifteen (15) days from the date of service of the Notice to exercise its rights under Section 363(k) at the price set forth in the Notice, barring which the holder of the Allowed Secured Claim shall have waived its rights under Section 363(k) of the Bankruptcy Code.

5.3    **Preservation of Causes of Action.**

Except as provided in, and unless expressly waived, released, compromised or settled in this Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan, and in accordance with Section 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or the Estate may hold against any person or entity are fully preserved.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of this Plan.  Nothing in this Plan shall be construed to effect a release or waiver of any claims of a Creditor against any other Creditor.

5.4    **Vesting of Assets of the Estate.**

All property of the Estate shall re-vest in the Reorganized Debtor on the Effective Date.  Except as may be expressly provided in this Plan or in a Non-Appealable Order of the Bankruptcy Court, no Asset of the Estate shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of the Debtor shall be deemed waived, released or compromised.

5.5     **Execution of Necessary Documents.**

Confirmation of this Plan shall constitute authorization for the Reorganized Debtor and the Liquidating Supervisor to enter into all documents, instruments and agreements reasonably necessary to effectuate the terms of this Plan.

5.6     **Voting of Claims.**

Each holder of an Allowed Claim in an impaired Class that retains or receives property under this Plan shall be entitled to vote separately to accept or reject this Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

5.7     **Nonconsensual Confirmation.**

If any impaired Class entitled to vote does not accept this Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected this Plan, the Debtor reserves the right (a) to seek confirmation of this Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend this Plan in accordance with Section 12.4 of this Plan.

5.6     **Retention of Professionals**.

The Liquidating Supervisor may retain such attorneys (including special counsel) accountants, advisors, expert witnesses, and other professionals as he considers advisable without necessity of approval of the Court.  Persons who served as Professionals to the Committee or the Debtor prior to the Effective Date may provide services to the Liquidating Supervisor.  The fees and expenses of the Liquidating Supervisor and professionals retained by him shall be paid by him in the ordinary course of business without the need for the approval of the Bankruptcy Court.

5.7     **Bond and Insurance Requirements**.

On the Effective Date, or immediately thereafter, the Liquidating Supervisor shall procure a bond in an amount equal to the estimated amount of the Assets.  The bond shall be written by an insurance company authorized to do business in the Commonwealth of Massachusetts and written on a standard and customary bond form.  The Liquidating Supervisor may adjust the amount of the Bond in his business judgment; provided that, in no event shall the amount of the bond be less than the amount of undistributed cash on hand.

5.8     **Tax Returns.**

In the event that any required tax returns are not filed by the Debtor prior to the Effective Date, the Liquidating Supervisor shall prepare or cause to be prepared, and shall file on behalf of the Debtor and the Estate, all state and federal tax returns required to be filed under applicable law, and shall pay all taxes due in connection with such returns.  The Liquidating Supervisor is hereby authorized to file such returns on behalf of the Debtor.  The Liquidating Supervisor shall have all of the rights and benefits of a "trustee" under Section 505 of the Bankruptcy Code for all periods until a Final Decree is entered closing the Bankruptcy Case.  No entity shall be entitled to assert any claim for any excise or property tax accruing after the Confirmation Date.

5.9     **Dissolution of the Debtor.**

Upon the completion of the administration of all of the Assets pursuant to this Plan, the Reorganized Debtor shall be deemed to be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Reorganized Debtor or payments to be made in connection therewith; provided, however, that the Liquidating Supervisor, on behalf of the Debtor, shall file with the appropriate state authority or authorities a certificate or statement of dissolution referencing this Plan.  The Reorganized Debtor shall not be required to file any documents, or take any other action, to withdraw its business operations from any states in which the Debtor was previously conducting business operations.

5.10    **Dissolution of the Committee.**

The Committee shall dissolve automatically on the Effective Date.  Upon such dissolution, its members, professionals, and agents shall be released from any further duties and responsibilities in the Bankruptcy Case and under the Bankruptcy Code, except with respect to applications for Professional Claims or reimbursement of expenses incurred as a member of the Committee and any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of Orders entered in the Bankruptcy Case.

5.11    **Resignation of Officers and Directors.**

Upon the Effective Date, all of the Debtor's officers and members of its board of directors shall be deemed to have resigned without the necessity of any further action or writing and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date to the Debtor or its Creditors under the Plan or applicable law**.**  Under no circumstances shall such parties be entitled to any compensation from the Debtor or the Liquidating Supervisor for services provided after the Effective Date, unless such individuals are subsequently employed by the Liquidating Supervisor to assist him in the consummation of the Plan.

5.12   **Final Decree.**

It shall be the exclusive duty of the Liquidating Supervisor to prepare and file a motion requesting that the Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI

**DISTRIBUTIONS TO CREDITORS AND PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

6.1   **Method of Distribution Under This Plan.**

(a)   In General.  Subject to Bankruptcy Rule 9010 and except as otherwise provided in this Plan, all distributions under this Plan to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date unless the Debtor and the Liquidating Supervisor have been notified in writing of a change of address.  The filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules, shall constitute notice of a change of address under this paragraph 6.1 of this Plan. Neither the Reorganized Debtor nor the Liquidating Supervisor shall have any obligation to locate the holders of Claims whose distributions or notices are properly mailed but nevertheless returned.

(b)   Form of Distributions.  Except as otherwise provided in this Plan, any payment of Cash made pursuant to this Plan shall be made by check.

(c)   Distributions to be on Business Days.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)   Fractional Dollars.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.49 or less, and rounding up in the case of more than $0.49).

(e)   Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  Neither the Liquidating Supervisor nor the Reorganized Debtor shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of the close of business on the Distribution Record Date.

6.2   **Objections to Disputed Claims.**

On and after the Effective Date, the Liquidating Supervisor shall prosecute any objections to the Claims of Creditors and shall have standing to object to the allowance of any

Claim and to assert and prosecute any counterclaim. Nothing in this Plan shall restrict the right of any party with standing to object to Claims against the Estate.

6.3     **Deadline for Objecting to Disputed Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Liquidating Supervisor may file an objection to a Claim until the 12:00 midnight on the Claim Objection Deadline, unless such deadline is extended by a written agreement between the Liquidating Supervisor and the holder of the Claim.

6.4     **Estimation of Claims.**

The Debtor (prior to the Effective Date) and the Liquidating Supervisor (after the Effective Date), may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection to such Claim has been filed. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.

All of the aforementioned Claims objections, estimation and resolution procedures set forth in Sections 6.2, 6.3, and 6.4 of this Plan are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

6.5     **Disputed Claims Reserve.**

(a)     <u>Establishment</u>. The Liquidating Supervisor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims, or in such lesser amount as required by a Non-Appealable Order.

(b)     <u>Investment of Cash</u>. Cash in the Disputed Claims Reserve may be invested only in Cash equivalents having maturities sufficient to enable the Liquidating Supervisor to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. The Liquidating Supervisor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)     <u>Distributions Upon Allowance of Disputed Claims</u>. The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions, in accordance with the terms of this Plan, of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, the Liquidating Supervisor or the Reorganized Debtor with respect to such Claim until the Disputed Claim becomes an Allowed Claim.

6.6    **Time For Distributions.**

(a)    Distributions to the holders of Allowed Priority Claims and Allowed General Unsecured Claims shall be made when the Liquidating Supervisor, in his sole discretion, determines that there are sufficient funds to justify making such a distribution.  The Liquidating Supervisor shall not be required to make distributions of less than $10.00.

(b)    Distributions to the holders of Allowed Secured Claims shall be made within twenty (20) days of the liquidation of such creditors' Collateral, or as otherwise agreed to between the Liquidating Supervisor and the holder of the Allowed Secured Claim.

6.7    **Tax Identification Numbers.**

All Creditors who wish to receive distributions under this Plan shall furnish to the Liquidating Supervisor such Creditor's employer or taxpayer identification number ("TIN"), as assigned by the Internal Revenue Service, within thirty (30) days of a written request for such TIN by the Liquidating Supervisor.  If a Creditor fails to provide the Liquidating Supervisor with the requested TIN within thirty (30) days of the written request, the Creditor shall be deemed to have waived: (a) the right to receive a Distribution, and (b) the Creditor's rights and claims under this Plan.

6.8    **Reversion of Unclaimed Checks and Disputed Claims Reserve.**

The following amounts shall revert to the Reorganized Debtor free and clear of any Claim, Lien or interest of the Person to whom the check was issued: (a) the amount of any checks issued by the Liquidating Supervisor under this Plan that remain uncashed for a period of 180 days after the date of such distribution; and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

## ARTICLE VII

### LIQUIDATING SUPERVISOR

7.1    **Appointment of Liquidating Supervisor, Administration of Reorganized Debtor.**

As of the Effective Date, Craig Jalbert shall be the Liquidating Supervisor.  The Reorganized Debtor shall remain in existence for the purpose of permitting the Liquidating Supervisor to: (a) administer, manage, invest, liquidate, sell or otherwise dispose of the Assets, (b) conduct an orderly wind down of the Reorganized Debtor's business and affairs, and (c) administer this Plan.  Upon the completion of administration of the Reorganized Debtor, the Reorganized Debtor shall be dissolved pursuant to Section 5.9 of this Plan.

7.2    **Corporate Authority.**

In accordance with Section 5.11 of this Plan and herein, as of the Effective Date the Liquidating Supervisor shall have the exclusive right and duty to manage the Reorganized Debtor and to fulfill the duties of the former members of its board of directors and officers, subject, however, to any limitations of liability set forth in this Plan.  As of the Effective Date, the Liquidating Supervisor is empowered and authorized to satisfy such responsibilities, duties and obligations without any further corporate authority (such as approval by any shareholders) that may have been required prior to the Effective Date.  As of the Effective Date, all actions of the Debtor shall be taken by the Liquidating Supervisor, or his designee, in the name of and on behalf of the Reorganized Debtor and/or the Estate.  The Liquidating Supervisor shall be authorized to enter his appearance on behalf of the Reorganized Debtor in any litigation or other legal proceeding pending as of the Effective Date.

7.3    **Liquidating Supervisor's Rights and Powers.**

The Liquidating Supervisors rights and powers shall include, subject to any limitations set forth in this Plan, the right and power to:

(a)    Sell at public or private sale, lease, exchange, transfer, convey or otherwise dispose of, on such terms and conditions, and at such time or times as the Liquidating Supervisor shall determine, any or all of the Assets (whether tangible or intangible); provided that, the Liquidating Supervisor shall not sell, lease, exchange, transfer, convey or otherwise dispose of any of Travelers' Collateral without Travelers' prior approval;

(b)    Grant options, make contracts, retain brokers, deliver deeds or other instruments of conveyance or transfer, and/or delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, exchange, transfer, conveyance or other disposal of any Asset;

(c)    Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Supervisor's duties;

(d)    Open and close accounts on behalf of the Reorganized Debtor with any banking, financial or investment institution, make deposits and withdrawals of cash and other property into or from any such account, make or endorse checks with respect to any such account;

(e)    Complete and file federal and state tax returns on behalf of the Reorganized Debtor;

(f)    Pay all reasonable and necessary costs of administration, including professional fees, associated with the administration of this Plan, the Reorganized Debtor and/or the Assets;

(g)    Subject to the limitations contained in this Plan, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all Claims;

(h)    Make the Distributions in accordance with the terms of this Plan;

      (i)      Investigate, prosecute, litigate, sell, transfer or abandon any Cause of Action, including, but not limited to, Avoidance Actions;

      (j)      Employ and consult with counsel, brokers, consultants, custodians, investment advisors, asset services, expert witnesses, auditors, accountants, other agents and any other individuals and/or professionals (any of which may be the Liquidating Supervisor and his or her firm) in connection with the administration of this Plan, the Reorganized Debtor and/or the Assets;

      (k)      File a suit in interpleader or in the nature of interpleader in any court of competent jurisdiction with respect to any Asset;

      (l)      File any other appropriate action for relief in a court of competent jurisdiction; and

      (m)      Take such steps as provided as necessary and proper to close the Bankruptcy Case and dissolve the Reorganized Debtor.

### 7.4    **Vesting of Estate Powers.**

Upon the Effective Date, the Liquidating Supervisor shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code with respect to all Assets and rights belonging to the Estate and/or the Reorganized Debtor, including, without limitation the standing and authority to commence, prosecute and compromise objections to Claims and Causes of Action, whether initially filed by the Debtor or as may be filed by the Liquidating Supervisor.  The Liquidating Supervisor shall stand in the same position as the Debtor and/or the Estate with respect to any claim the Debtor and/or the Estate may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Liquidating Supervisor shall succeed to all of the Debtor's and/or the Estate's rights to preserve, assert or waive any such privilege.

### 7.5    **Limitations on Liquidating Supervisor's Liabilities as to Losses.**

The Liquidating Supervisor shall not be responsible, and shall have no liability whatsoever to any person for any loss to the Reorganized Debtor resulting from the investment of the Assets, or their proceeds, in any Permitted Investments.  The Liquidating Supervisor shall not invest or reinvest any Assets other than in a Permitted Investment.  The Liquidating Supervisor shall not have any liability to any retirement, employee benefit, or pension plan of the Debtor in excess of the amounts available to be distributed from such Plans.

### 7.6    **Selection of Agents.**

The Liquidating Supervisor may retain his or her firm or company to provide professional services in conjunction with his duties under this Plan.  The Liquidating Supervisor shall not be liable for any loss to the Reorganized Debtor or any person with an interest in the Reorganized Debtor by reason of any mistake or default of any such agent or consultant unless such mistake or default breaches the standard of care set forth in Section 7.8(a) of this Plan.

7.7    **Maintenance of Register.**

The Liquidating Supervisor shall at all times maintain a register of the names, addresses, and amount of the Claims and Equity Interests in the Reorganized Debtor as of the Effective Date and as revised from time to time thereafter.

7.8    **Liability of Liquidating Supervisor.**

(a)    <u>Standard of Care</u>.  The Liquidating Supervisor shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by this Plan, or be responsible for the consequences of any act or failure to act, except for bad faith, gross negligence or willful misconduct.  The Liquidating Supervisor shall not have any fiduciary relationship with any party by virtue of this Plan except as specifically set forth in this Agreement:

(i)    The Liquidating Supervisor shall not, solely by virtue of his position as Liquidating Supervisor, be liable or in any way responsible for the acts or omissions of the Debtor, its board of directors, officers, employees, or agents, that occurred prior to the Effective Date.

(ii)    Unless indemnified to his satisfaction against liability and expense, the Liquidating Supervisor shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under this Plan or to prosecute or defend any suit in respect of this Plan.  If the Liquidating Supervisor requests approval from the Bankruptcy Court with respect to any act or action in connection with this Plan, the Liquidating Supervisor shall be entitled (but shall not be required) to refrain (without incurring any liability to any person by so refraining) from such act or action unless and until he has received such instructions or approval.  In no event shall the Liquidating Supervisor or any of his representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(iii)    The Liquidating Supervisor shall not be responsible in any manner to the Debtor, its Estate, any holder of a Claim or Interest, or any party-in-interest for:

(A)    the creditworthiness of any party and the risks involved to the Reorganized Debtor or such holder or party-in-interest;

(B)    the effectiveness, enforceability, genuineness, validity, or any due execution of this Plan as to any person other than the Liquidating Supervisor;

(C)    any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with this Plan that does not constitute a breach of the standard of care set forth in Section 7.8(a) of this Plan on the part of the Liquidating Supervisor;

(D)    the existence, priority or perfection of any existing Lien; or

(E)     the observation or compliance with any of the terms, covenants, or conditions of this Plan on the part of any party thereto other than the Liquidating Supervisor.

(iv)     The Debtor, holders of Claims or Equity Interests and parties-in-interest, by voting for this Plan and/or accepting the benefits of this Plan, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Supervisor except for actions or omissions which violate the standard of care set forth in Section 7.8(a) of this Plan.

(b)     <u>No Liability for Acts of Predecessor</u>.  No successor Liquidating Supervisor shall be in any way responsible for the acts or omissions of any preceding Liquidating Supervisor, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Supervisor expressly assumes such responsibility.  Any successor Liquidating Supervisor shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Supervisor by any preceding Liquidating Supervisor and shall be responsible only for those Assets included in such statement.

(c)     <u>No Implied Obligations</u>.  The Liquidating Supervisor's liability shall be limited to the performance of such duties and obligations as are specifically set forth in this Plan.  The Liquidating Supervisor shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in this Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Assets.  The Liquidating Supervisor makes no representations as to the value of the Assets.

(d)     <u>Reliance by Liquidating Supervisor on Documents or Advice of Counsel or Other persons</u>.  The Liquidating Supervisor may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Agent to be genuine and to be signed or presented by the proper persons.  Subject to his obligation to meet the standard of care in Section 7.8(a), the Liquidating Supervisor shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

(e)     <u>No Personal Obligation for the Debtor's Liabilities</u>.  Holders of Claims and Equity Interests, and other persons transacting business with the Liquidating Supervisor in his capacity as Liquidating Supervisor, shall be limited to the Assets to satisfy any liability incurred by the Liquidating Supervisor to such person in carrying out the terms of this Plan, and the Liquidating Supervisor shall have no personal obligation to satisfy any such liability.

7.9     **Reports; Tax Returns.**

The Liquidating Supervisor shall prepare and submit any an all reports required under the Plan and as may be further ordered by the Bankruptcy Court.  After the Effective Date, the Liquidating Supervisor shall be responsible for the filing of any and all federal and state tax

returns required by law to be filed by the Reorganized Debtor, including the final tax returns, and
shall pay all tax liabilities arising from such tax returns.

7.10    **Liquidating Supervisor's Compensation.**

It is anticipated that the Liquidating Supervisor can fulfill his duties on a part-time basis.
The Liquidating Supervisor's shall be entitled to compensation, at an hourly fee equal to the
regular rates for the Liquidating Supervisor as then in effect, provided that such hourly rate may
be adjusted from time to time in the ordinary course of business. The Liquidating Supervisor
shall be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in the
performance of his duties under the Plan. The Liquidating Supervisor shall not be entitled to a
commission. Twenty-five thousand dollars ($25,000) of the Travelers' Advance shall be paid to
the Liquidating Supervisor on the Effective Date to be used solely to fund the Liquidating
Supervisor's administration of the Reorganized Debtor.

7.11    **Liquidating Supervisor's Indemnification.**

The Liquidating Supervisor shall be indemnified by, held harmless, and receive
reimbursement from the Assets for any and all claims, actions, demands, losses, damages,
expenses, and liabilities, including without limitation court costs, attorneys' fees and
accountants' fees incurred, except in the event that a court of competent jurisdiction determines
that such losses or claims were the result of a breach of the standard of care set forth in Section
7.8(a) of this Plan.

7.12    **Removal of Liquidating Supervisor.**

The Liquidating Supervisor may be removed only for cause upon a motion to the Court.
If the Liquidating Supervisor is removed for cause, the Liquidating Supervisor shall not be
entitled to any accrued but unpaid fees, reimbursements or other compensation. The term
"cause" shall mean: (a) the Liquidating Supervisor's gross negligence or willful failure to
perform his duties under this Plan, (b) the Liquidating Supervisor's misappropriation or
embezzlement of any Assets or the proceeds of the Assets, or (c) the Liquidating Supervisor's
continued or repeated negligence or failure to perform his duties under this Plan. If a
Liquidating Supervisor is unwilling or unable to serve by virtue of his inability to perform his
duties due to death, illness, or other physical or mental disability, subject to a final accounting,
such Liquidating Supervisor shall be entitled to receive all accrued and unpaid fees,
reimbursement of expenses, and other compensation incurred before his removal, and to any out-
of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties
and all rights to any successor Liquidating Supervisor.

7.13    **Resignation of Liquidating Supervisor.**

A Liquidating Supervisor may resign upon motion to the Bankruptcy Court, which
resignation shall become effective at the time specified by the Court. If a Liquidating Supervisor
resigns from his position hereunder, subject to a final accounting, such Liquidating Supervisor
shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other
compensation incurred before his resignation, and any out-of-pocket expenses reasonably

incurred in connection with the transfer of all powers and duties to the successor Liquidating Supervisor.

### 7.14    Successor Liquidating Supervisor.

In the event that a Liquidating Supervisor is removed, resigns, or otherwise ceases to serve as Liquidating Supervisor, a successor Liquidating Supervisor may be appointed by motion of a party-in-interest, subject to approval by the Bankruptcy Court, or *sua sponte* by order of the Bankruptcy Court.

### 7.15    Third Parties.

There is no obligation on the part of any party transacting business with the Reorganized Debtor or any agent of the Reorganized Debtor (including the Liquidating Supervisor) to: (a) inquire into the validity, expediency, or propriety of any transaction, (b) inquire into the authority of the Liquidating Supervisor, or any agent of the Liquidating Supervisor, to enter into or consummate the transaction, or (c) to monitor the application of the purchase money or other consideration paid or delivered to the Reorganized Debtor.

## ARTICLE VIII

### EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

### 8.1    Rejection of Executory Contracts and Unexpired Leases.

Any executory contract or unexpired lease (excluding any insurance policy) that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated by the Debtor as being an executory contract or unexpired lease to be assumed at the time of confirmation of this Plan, shall be deemed rejected on the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code. Unless designated by the Debtor to be rejected at the time of confirmation of this Plan, all executory insurance policies shall be deemed assumed on the Effective Date.

### 8.2    Rejection Damages Claims.

If the rejection of an executory contract or unexpired lease results in a Claim, such Claim, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor, the Liquidating Supervisor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor and the Liquidating Supervisor on or before thirty (30) days following the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, all such Claims for which proofs of claim are timely filed will be treated as Class 5 General Unsecured Claims. The Reorganized Debtor or the

Liquidating Supervisor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with this Plan.

## ARTICLE IX

### DISCHARGE OF CLAIMS

9.1     **Injunction Relating to this Plan.**

As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estates or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to this Plan, except to the extent expressly permitted under this Plan.

9.2     **Exculpation.**

Neither the Debtor, the Reorganized Debtor, the Liquidating Supervisor, the Creditors' Committee, nor any of its respective present or former members, officers, directors, employees, general or limited partners, advisors, attorneys agents, successors or assigns, shall have or incur any liability to any holder to a Claim or an Interest, or any other party in interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of its successor or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of this Chapter 11 bankruptcy proceeding, the pursuit of confirmation of this Plan, the Disclosure Statement, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, provided that, (a) the terms of Section 9.2 of this Plan shall not apply to any liability of any entity for its breach of fiduciary duty, bad faith, willful misconduct or negligence, (b) nothing herein exculpates the Debtor, the Reorganized Debtor or its agents from effectuating the Plan, and (c) nothing herein shall limit or impair any rights, claims or obligations the Debtor may have against any entity as of the Petition Date.

9.3     **Discharge.**

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or this Plan, and except with respect to Travelers' Claims and Liens, the distributions made pursuant to and in accordance with the applicable terms and conditions of this Plan are in full and final satisfaction, settlement, release and discharge as against the Debtor and the Reorganized Debtor of any debt of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or the Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted this Plan.

9.4     **Setoff.**

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Debtor, the Reorganized Debtor or the Estate of any rights of setoff the Debtor, the Reorganized Debtor or the Estate may have against any Person.

## ARTICLE X

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

10.1     **Conditions Precedent to Effectiveness.**

This Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied, or such conditions shall have been waived pursuant to Section 10.2 of this Plan:

(a)     The Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court;

(b)     If an appeal of the Confirmation Order has been timely filed, no stay of the Confirmation Order pending appeal shall have been entered; and

(c)     All actions, other documents and agreements necessary to implement this Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective.

10.2     **Waiver of Conditions.**

Except for the conditions set forth in Sections 10.1(a) of this Plan, one or more of the conditions precedent to the effectiveness of this Plan set forth in Section 10.1 may be waived by the Debtor in its sole discretion.

## ARTICLE XI

### RETENTION OF JURISDICTION

After the Effective Date and except as specifically set forth in this Plan, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Case and this Plan:

(a)     To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses;

(c)     To hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

(d)     To enforce the provisions of this Plan subject to the terms of this Plan;

(e)     To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of this Plan;

(f)     To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in this Plan;

(g)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)     To hear and determine any motions, adversary proceedings, contested or litigated matters, and any other matters and grant any applications involving the Debtor that may be pending on the Effective Date;

(i)     To issue injunctions, enter and implement other orders, or take such other actions as may be necessary and appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plan or Confirmation Order;

(j)     To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to the Plan are enjoined or stayed;

(k)     To determine such other matters as may be provided for in the Confirmation Order;

(l)     To hear and determine any and all adversary proceedings arising from or related to the Causes of Action; and

(m)     To enter an order closing the Bankruptcy Case.

## ARTICLE XII

### MISCELLANEOUS

12.1    **Bar Date for Administrative Expense Claims.**

The Confirmation Order will establish the Administrative Expense Claim Bar Date for the filing of all Administrative Expense Claims (not including Professional Fee Claims, United States Trustee fees or the expenses of the members of the Committee), which date shall be thirty (30) days after the Effective Date.  Holders of asserted Administrative Expense Claims, other than Professional Fee Claims, United States Trustee fees, or the expenses of the members of the Committee, not paid prior to the Confirmation Date must submit proof of Administrative Expense Claim on or before the Administrative Expense Claim Bar Date or forever be barred from doing so.  The notice of confirmation to be delivered pursuant to Bankruptcy Rule 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Expense Claim Bar Date.  The Liquidating Supervisor shall have sixty (60) days (or such longer period as may be allowed by Order of the Court at the request of the Liquidating Supervisor) following the

Administrative Expense Claim Bar Date to review and object to such Administrative Expense Claims.  If no objection is made then the Administrative Expense Claim shall be Allowed and the Liquidating Supervisor shall pay such Administrative Expense Claim as soon as practicable.

### 12.2  Continuation of Injunctions or Stays until Effective Date.

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of a Final Decree by the Bankruptcy Court.

### 12.2  Applicability of Sections 1125 and 1145 of the Bankruptcy Code.

The protection afforded by Section 1125(e) of the Bankruptcy Code with regard to the solicitation of acceptances or rejections of the Plan shall apply to the fullest extent provided by law, and the entry of the Confirmation Order shall constitute the determination by the Court that the Debtor and its respective officers, directors, partners, employees, members, agents, attorneys, accountants, or other professionals, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Section 1125(e) of the Bankruptcy Code.

### 12.3  Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under this Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by this Plan; (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with this Plan, the issuance, renewal, modification or securing of indebtedness by such means, including, without limitation, the recording or filing of any documents associated with this Plan; and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under this Plan is to be recorded shall, pursuant to the Confirmation Order, for a period of ninety (90) days after the Effective Date, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

### 12.4  Amendment or Modification of this Plan.

Alterations, amendments or modifications of this Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that this Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the

Debtor shall have complied with Section 1125 of the Bankruptcy Code.  This Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit to this Plan or in any Plan Document.

12.5   **Severability.**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

12.6   **Revocation or Withdrawal of this Plan.**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void.

12.7   **Binding Effect.**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

12.8    **Notices.**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

To the Reorganized Debtor:

Craig R. Jalbert, as Liquidating Supervisor for Modern Continental Construction Co., Inc.
Verdolino & Lowey, P.C.
124 Washington Street, Suite 101
Foxboro, MA 02035
Tel:  508-543-1720
Fax: 508-543-4114

With a copy to:

Hanify & King, Professional Corporation
One Beacon Street, 21st Floor
Boston, MA  02108
Attn: Harold B. Murphy, Esq.
Tel:  617-423-0400
Fax: 617-423-0498

12.9    **Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

12.10   **Withholding and Reporting Requirements.**

In connection with the consummation of this Plan, the Reorganized Debtor and the Liquidating Supervisor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

12.13   **Post-Confirmation Fees, Final Decree.**

The Liquidating Supervisor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed.  After Confirmation of the Plan, the Liquidating Supervisor will serve the United States Trustee with a quarterly report for so long as the Bankruptcy Case remains open.  The quarterly report shall include the following:

(a)    A statement of all disbursements made during the course of the month, whether or not pursuant to this Plan;

(b)    With respect to those Allowed Claims whose distribution is being made by the Liquidating Supervisor, a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan;

(c)    The Liquidating Supervisor's projections as to his continuing ability to comply with the terms of the Plan;

(d)    A description of any other factors that may materially affect the Liquidating Supervisor's ability to complete his obligations under the Plan; and

(e)    An estimated date when an application for Final Decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

12.14  **Allocation of Plan Distributions between Principal and Interest.**

Except as otherwise expressly provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

12.15  **Headings.**

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

[this space intentionally left blank]

12.16   **Inconsistency.**

In the event of any inconsistency between this Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to this Plan, the terms of this Plan shall govern.

Modern Continental Construction Co., Inc.,


By: /s/ John Pastore
    Name: John Pastore
    Title: President


/s/ D. Ethan Jeffery
Harold B. Murphy, Esq. (BBO #362610)
D. Ethan Jeffery (BBO #631941)
HANIFY & KING,
Professional Corporation,
One Beacon Street, 21st Floor
Boston, MA  02108
Telephone:  (617) 423-0400
Facsimile:   (617) 423-0498

*Counsel for the Debtor and Debtor-in-Possession*

Dated: September __, 2009
::ODMA\PCDOCS\DOCS\539082\1